***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission AFFIRMS with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing and in the Pretrial Agreement as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the Workers' Compensation Act. The Industrial Commission has jurisdiction over the parties and of the subject matter, and an employer-employee relationship existed between plaintiff and defendant-employer.
2. All parties have been correctly designated and there are no questions as to misjoinder or non-joinder of the parties.
3. Plaintiff sustained a compensable back injury on April 20, 2004. Defendants accepted the compensability of these claims via the filing of a Form 60 with the Industrial Commission.
4. Plaintiff's average weekly wage equals at minimum $1,177.20 per week. This yields the maximum compensation rate for 2005 of $688.00 per week.
5. Documents admitted into evidence before the Deputy Commissioner included the following:
 a. Stipulated Exhibit #1: Pre-Trial Agreement
 b. Stipulated Exhibit #2: I.C. Filings, Plaintiff's Discovery Responses, Defendants' Discovery Responses, Plaintiff's Medical Records, Form 22 and Wage Records, Applicant Appraisal Report, Report of Work-Related Injury or Illness, Plaintiff's Job Description and Vocational Report.
6. Issues for determination before the Full Commission are as follows:
 a. Whether the treatment recommended and previously provided by Dr. Dina Eisinger for plaintiff's ongoing back condition is reasonable and necessary in relation to plaintiff's work injury of April 20, 2004, and therefore the *Page 3 
responsibility of defendants and if so, should plaintiff be allowed to change treating physicians to Dr. Eisinger?
 b. Whether plaintiff is entitled to additional benefits pursuant to N.C. Gen. Stat. § 97-29 for a compensable back injury sustained in 2004 when plaintiff returned to work on September 1, 2005 and continued to work until February 13, 2009?
 c. If plaintiff is entitled to additional benefits pursuant to N.C. Gen. Stat. § 97-29, are defendants entitled to a credit pursuant to N.C. Gen. Stat. § 97-42 for the long term disability benefits plaintiff received through a plan that was fully funded by defendant-employer?
 ***********
Based upon the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 58 years old at the time of the hearing before the Deputy Commissioner. Plaintiff was employed by defendant-employer on April 20, 2004 as an MRI technologist.
2. Plaintiff injured his back at work on April 20, 2004. Defendants accepted the claim as compensable on a Form 60 and paid medical and indemnity compensation.
3. After plaintiff's work-related injury, defendants directed plaintiff to have medical treatment for his mid-thoracic spine condition at the Durham Regional Employee Health Center, where he was provided medication and physical therapy. *Page 4 
4. Plaintiff's back pain continued despite physical therapy and he was referred to Dr. Price of Regional Neurosurgery. Dr. Price in turn referred plaintiff to Dr. Scott Sanitate for ongoing pain management treatment.
5. Plaintiff began treating with Dr. Sanitate on September 13, 2004. Dr. Sanitate diagnosed plaintiff with a thoracic spine injury and provided plaintiff conservative pain management treatment including PENS unit and Vicodin that continued over the next five years.
6. Plaintiff was able to return to work for the defendant-employer in September 2005. Plaintiff continued to treat with Dr. Sanitate after he returned to work through October 2009.
7. When plaintiff returned to work in 2005, he did so under work restrictions assigned by Dr. Sanitate, which included no lifting more than 25 pounds and restrictions on repetitive bending, flexing and pulling. Plaintiff returned to work in the MRI department in a modified position. Plaintiff was not able to perform patient transfers or heavy lifting because of his restrictions.
8. In November 2008, plaintiff was asked by the defendant-employer to work 12-hour shifts instead of 8-hour shifts. Even though this was a voluntary request by the defendant-employer, plaintiff accepted because he was concerned that he would be terminated from his position if he refused. After plaintiff began working the 12-hour shifts, he began to experience increased pain and difficulty recovering from pain after performing the longer shifts.
9. On Friday, February 13, 2009, plaintiff experienced increased pain that caused him to be unable to sleep over the weekend. On Monday, February 16, 2009, plaintiff was unable to function due to his pain and lack of sleep. Plaintiff told his supervisor that he was taking the next day off work in order to receive medical treatment in the form of injections to his joints. *Page 5 
Plaintiff had been receiving ongoing treatment for his knees, ankles and wrist for several years, and his medical appointment on Tuesday, February 17, 2009 had been scheduled for several weeks.
10. On Monday, February 16, 2009, plaintiff's supervisor told him that the Director of Radiology required him to complete a Fitness for Duty Evaluation before he could return to work. The Fitness for Duty Evaluation occurred on February 24, 2009 and was performed by Physician's Assistant Billy Collins under the direction of Dr. Carol A. Epling. Plaintiff presented to the clinic with complaints of increased pain in both his ankle and wrist joints. Plaintiff reported that over the last three months his pain symptoms had gotten worse in both his ankles and wrists. The report from the Fitness for Duty Evaluation indicates that plaintiff's back and neck symptoms were unchanged at that point in time and that the plaintiff had received bilateral ankle injections from a foot specialist on February 20, 2009.
11. As a result of the Fitness for Duty Evaluation, plaintiff was assessed with chronic back and neck pain from the April 2004 work-related injury which was stable. Plaintiff was diagnosed with severe osteoarthritis of the bilateral wrist and ankles with significant pain exacerbation which was not work related. Plaintiff was assigned to sedentary duty for the next ten days in an attempt to rest his joints and help his pain.
12. After plaintiff's appointment, he was met by Ms. Sharon Edwards from defendant-employer's Human Resources Department and was provided a disability insurance form to complete. Even though defendant-employer had accommodated plaintiff's work-related restrictions for many years, he was informed that he now could not return to work in his position with the defendant-employer with restrictions of any kind. Plaintiff has not returned to work for the defendant-employer since February 13, 2009. *Page 6 
13. Plaintiff applied for benefits through Duke University's long term disability program and received $3,282.24 per month through that program after being approved. Defendant-employer's long term disability program is fully funded by defendant-employer.
14. The basis for plaintiff's long term disability application was his wrist, knee and ankle conditions. Plaintiff did not include his admittedly compensable workers' compensation back injury/condition on his long term disability application, but instead requested that defendant-employer/carrier reinstate temporary total disability benefits for the back condition. The reinstatement of workers' compensation benefits was denied.
15. Ms. Paula Whitfield is the MRI manager for the defendant-employer. She is responsible for hiring in the MRI department. She testified that any individual hired for the MRI technologist position in that department would have to be able to perform all of the job requirements. Ms. Whitfield agreed that the job requirements of the MRI technologist position include being able to push and pull a stretcher and manipulate patients, and that this is an important part of the job.
16. Mr. Greg Thon was the Director of Radiology for Durham Regional Hospital. Mr. Thon testified that each team member in the MRI department should be "strong in every situation because we are dealing with patients that need a lot more lifting. . . ." According to Mr. Thon, all of the MRI technicians in the MRI department should be able to perform the same duties as everyone else. All employees should be able to perform all lifting and patient transferring that is required of other employees. If a prospective employee could not perform patient lifting and transferring, then he would not meet the job requirements and would not be a reasonable candidate for an MRI technician. Mr. Thon admitted that plaintiff was able to *Page 7 
continue to work in his position after this 2004 back injury only because accommodations were made for his limitations in the position.
17. After plaintiff stopped working for defendant-employer he continued to treat with Dr. Sanitate through October 2009. On February 20, 2009, plaintiff was examined by Dr. Sanitate in regard to his thoracic spine condition. Dr. Sanitate noted that plaintiff continued to have pain associated with his back condition. Dr. Sanitate noted that plaintiff had been working 12-hour shifts three times a week which increased his pain with walking and lifting. Dr. Sanitate further noted that plaintiff had experienced increased insomnia and increased stress because of his increased pain.
18. On April 24, 2009, Dr. Sanitate examined plaintiff and noted that plaintiff had been experiencing an increase in pain over the past six months and that he had worse pain secondary to his thoracic and cervical spine injuries. Dr. Sanitate noted that plaintiff had insomnia and was unable to sleep. He noted that plaintiff was only sleeping in one to two-hour intervals.
19. Plaintiff has treated with Triangle Orthopedic Associates in relation to his non-work-related orthopedic conditions. Plaintiff has treated with various physicians at Triangle Orthopedic Associates for the degenerative arthritis in his ankles, wrists and lower extremities. He has received injections, surgery, medications and therapy for his non-work-related orthopedic conditions. Plaintiff was referred by Dr. Dimmig, a physician treating plaintiff at Triangle Orthopedic Associates, to the Rehabilitative Medicine Clinic with Triangle Orthopedic Associates due to his multiple ongoing conditions.
20. Dr. Kimberly Barrie of Triangle Orthopedic Associates treated plaintiff for bilateral wrist arthritis. On March 2, 2009, Dr. Barrie performed a wrist fusion. Dr. Barrie took *Page 8 
plaintiff out of work as of March 5, 2009 based solely on plaintiff's wrist. Dr. Barrie also supported plaintiff's application for long term disability benefits based on his wrist problems.
21. On December 18, 2009, plaintiff was evaluated by Dr. Dina Eisinger, a pain management physician at Triangle Orthopedic Associates. Dr. Eisinger noted that plaintiff experienced pain in multiple areas throughout his body. Dr. Eisinger prescribed Opana ER for treatment of his pain.
22. On January 4, 2010, plaintiff was evaluated again by Dr. Eisinger, who noted that plaintiff had experienced significant pain relief from the medication she had prescribed at the previous appointment. Dr. Eisinger noted that plaintiff's pain level had decreased from a 7-8 to a 2-3 out of 10. Plaintiff began ongoing treatment on a continuous basis with Dr. Eisinger and experienced improvement in his back pain from Dr. Eisinger's treatment.
23. Dr. Dina Eisinger testified regarding her treatment of plaintiff. Dr. Eisinger indicated that both plaintiff's osteoarthritis and thoracic spine conditions were contributing to the pain she was treating, but that she could not apportion their relative contribution. Dr. Eisinger testified that she would assign work restrictions of no lifting greater than 20-30 pounds and no repetitive bending, stooping and twisting in high impact activities. Dr. Eisinger also indicated that plaintiff needed to have a job that allowed him to be able to change positions as needed.
24. Dr. Eisinger also testified regarding her knowledge of MRI technologist positions and whether plaintiff could perform those jobs. Dr. Eisinger is familiar with the lifting requirements associated with moving and transferring patients. Dr. Eisinger did not think plaintiff could perform the MRI technologist job. Dr. Eisinger confirmed that plaintiff's thoracic spine injury and osteoarthritis problems would prevent him from performing the MRI technologist job. *Page 9 
25. Dr. Eisinger's treatment was appropriate for someone with plaintiff's work-related thoracic spine condition. The pharmacologic treatment that Dr. Eisinger has been providing was also appropriate and necessary treatment. Plaintiff requires ongoing medical treatment for his thoracic spine condition. Dr. Eisinger's medical treatment tended to effect a cure and give relief for plaintiff's thoracic spine condition.
26. Dr. Sanitate indicated that plaintiff had restrictions of no patient lifting or heavy lifting on a long-term basis. The specific restrictions were no lifting greater than 20 pounds and to avoid repetitive flexion and extension of the lumbar spine.
27. Dr. Sanitate testified that it would be difficult to apportion plaintiff's restrictions and whether they were related solely to plaintiff's osteoarthritis or to his thoracic condition. Plaintiff's restrictions continued throughout the time Dr. Sanitate treated plaintiff.
28. Dr. Sanitate is familiar with Dr. Eisinger of Triangle Orthopedic Associates, and he did not have any objection to plaintiff obtaining treatment from Dr. Eisinger, who has the ability to provide plaintiff reasonable and necessary medical treatment for his conditions.
29. Based upon a preponderance of the evidence in view of the entire record, including but not limited to the work restrictions assigned by Dr. Sanitate, plaintiff has been unable to earn the same wages he was earning at the time of his injury in the same employment as an MRI technician since February 13, 2009, as a result of the injury of April 20, 2004. The job that plaintiff performed for defendant-employer from 2004 to February 13, 2009 was make work in the sense that he was afforded accommodations in terms of his ability to perform patient transfers and other heavy lifting. Defendant-employer would not hire someone off the street with plaintiff's restrictions to work as an MRI technician, and there is no evidence that any other employer in the regional economy would either. The job plaintiff performed for defendant *Page 10 
employer from the date of injury to February 13, 2009 did not establish wage earning capacity, and therefore the fact that his inability to continue in the modified position after February 13, 2009 may have been due in large part to limitations associated with his non-work-related medical conditions is irrelevant.
30. Mr. Fryar is a vocational rehabilitation expert who was retained by plaintiff to testify as an expert witness in this case. Mr. Fryar's report contains a Transferrable Skills Analysis describing plaintiff's past work experience, skills, education and abilities. Based on the Transferrable Skills Analysis, Mr. Fryar determined that plaintiff did not possess sufficient transferable skills to obtain suitable employment as defined by the North Carolina Industrial Commission. Mr. Fryar indicated that plaintiff's skill set developed as an MRI technician was very specific in nature and that the skills plaintiff possessed would not easily transfer into a position earning similar wages as plaintiff earned at the time of his injury. Mr. Fryar indicated that plaintiff's only option to obtain suitable employment would be to move into a supervisory or administrative role, which he could not do without further education.
31. According to Mr. Fryar, in order for plaintiff to return to work now, he would have to locate semi-skilled to unskilled sedentary occupations to fall within his work restrictions. These positions would offer wages in the $8.00 — $9.00 per hour range, and these types of wages are not considered suitable as they would not meet plaintiff's pre-injury earning capacity of $60,000 — $61,000 per year.
32. Mr. Ron Alford is a vocational rehabilitation expert retained by defendant-employer to review plaintiff's job within the MRI department to determine the essential functions of the job. Mr. Alford completed an analysis of the job and determined that defendant-employer accommodated plaintiff when plaintiff returned to work by not requiring him to lift or *Page 11 
move patients. Mr. Alford testified that moving patients is a normal requirement for MRI technicians positions that he has reviewed while working as a vocational counselor.
33. Mr. Alford agreed with Mr. Fryar that plaintiff would require additional training and education to obtain light to sedentary positions within his current restrictions.
34. Based upon the preponderance of the evidence in view of the entire record, the undersigned find that it would be futile for plaintiff to seek other employment without further training and education.
35. The Full Commission places greater weight on the opinions of Mr. Alford and finds, based on the totality of the evidence and circumstances, that plaintiff may benefit from vocational rehabilitation, including further education and retraining for an administrative or supervisory position. When an employee can potentially receive lifetime indemnity compensation well past retirement age, it is not unreasonable to pursue vocational rehabilitation for someone who is currently 60 years old.
36. Plaintiff would benefit from ongoing treatment with Dr. Eisinger, as it has been shown to give relief and it may lessen the period of disability.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to his back April 20, 2004. Defendants accepted the claim as compensable and have provided medical benefits and indemnity benefits.
2. Plaintiff returned to work for the defendant-employer in a modified position not available in the competitive marketplace in September 2005. The position was specifically *Page 12 
modified for plaintiff's permanent restrictions and was not available to the general public and was therefore not indicative of plaintiff's wage earning capacity. Additionally, the modified job plaintiff performed was not suitable employment because it was not available in the competitive marketplace. People v. Cone MillsCorp., 316 N.C. 426, 444, 342 S.E. 2d 798, 810 (1986).
3. Plaintiff has been out of work under permanent restrictions since February 13, 2009 as the result of a combination of his work-related back injury and non-work related orthopedic conditions. Inasmuch as plaintiff's treating physicians were unable to apportion plaintiff's disability, plaintiff is entitled to compensation for the entire disability.
4. Plaintiff is entitled to disability benefits as it would be futile for him to seek further employment because of a combination of his age, physical limitations, experience, education and skills. Plaintiff has been disabled from employment since February 13, 2009 and is therefore entitled to ongoing benefits pursuant to N.C. Gen. Stat. § 97-29. Russell v. LowesProduct Distrib.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
5. Plaintiff has been receiving ongoing medical treatment for his compensable injury from Dr. Dina Eisinger of Triangle Orthopedic Clinic. Dr. Eisinger's treatment has caused plaintiff to experience significant relief from his compensable injury and therefore plaintiff has proven by a preponderance of the evidence that a change of treating physician to Dr. Eisinger is reasonably necessary to effect a cure, provide relief or lessen the period of disability. Plaintiff is entitled to further treatment with Dr. Eisinger for his injury. N.C. Gen. Stat. § 97-25.
6. Defendants shall provide plaintiff with vocational rehabilitation and retraining with a vocational rehabilitation consultant of their choosing. Plaintiff shall cooperate with the vocational rehabilitation and retraining. N.C. Gen. Stat. § 97-25; Rule VIII.G., North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals. *Page 13 
7. Plaintiff has received long term disability benefits pursuant to an employer-funded plan. In the discretion of the Commission, defendants are entitled to a credit for long term disability benefits paid plaintiff since February 13, 2009. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following
 AWARD
1. Subject to attorney's fees approved herein, defendants shall pay to plaintiff disability compensation benefits at the compensation rate of $688.00 per week for the period beginning February 13, 2009 through the present and continuing until further Order of the Industrial Commission.
2. Defendants shall provide vocational rehabilitation and shall authorize plaintiff to treat with Dr. Dina Eisinger for his work-related back condition. Defendants shall authorize and pay for, pursuant to the Industrial Commission fee schedule, all treatment recommended by Dr. Eisinger to treat plaintiff's compensable work-related back condition.
3. All accrued disability compensation shall be paid to plaintiff in one lump sum.
4. Defendants are entitled to a credit for long term disability benefits paid to Plaintiff for the period February 13, 2009 through the date of this Award.
5. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the total compensation awarded to Plaintiff. Defendants shall deduct 25% of the lump sum amount owed to Plaintiff and pay this amount directly to Plaintiff's counsel. Thereafter, every fourth check shall be paid to Plaintiff's counsel.
6. Defendants shall pay the costs. *Page 14 
This ___ day of November, 2011.
 S/____________ TAMMY NANCE COMMISSIONER
CONCURRING:
 S/_________________ DANNY L. McDONALD COMMISSIONER
 S/________________ PAMELA T. YOUNG CHAIR *Page 1